# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

|  |  |  |
|---|---|---|
| DAVID PELHAM and GAIL PELHAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:11 CV 99 |
| | ) | |
| SHARON RUTH ALBRIGHT, in her individual and | ) | |
| official capacities as an attorney for the Indiana | ) | |
| Department of Child Services; | ) | |
| LINDA ROEHM, in her individual and official | ) | |
| capacity with Families First; | ) | |
| KIMBERLY D. SLAUGHTER, in her individual and | ) | |
| official capacity as Supervisor, with the Indiana | ) | |
| Department of Child Services; | ) | |
| COURTNEY J. HARDMAN, in her individual and | ) | |
| official capacity as Family Case Manager with the | ) | |
| Indiana Department of Child Services; | ) | |
| MARGARET APPLEBY, in her individual and | ) | |
| official capacity as Court Appointed Special | ) | |
| Advocate; | ) | |
| AMY M. CORBIN, in her individual and official | ) | |
| capacity as Family Case Manager with the Indiana | ) | |
| Department of Child Services; and | ) | |
| THE INDIANA DEPARTMENT OF CHILD | ) | |
| SERVICES; | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on two motions: a motion to dismiss filed by

defendant Linda Roehm (DE # 17) and a motion for judgment on the pleadings filed by

the Indiana Department of Child Services ("DCS"), Sharon Albrecht,[1] Kimberly

---

[1] It appears that Sharon Albrecht was improperly sued in this case as Sharon
Albright. (*See, e.g.,* DE # 12 at 1.) The court uses the apparent correct name for this
defendant for purposes of the text of this opinion.

Slaughter, Courtney Hardman, and Amy Corbin ("the State Defendants"). (DE # 25.) For the reasons set forth below, Roehm's motion is denied, and the State Defendants' motion is granted in part and denied in part.

## I.     BACKGROUND

Plaintiffs are the grandparents of J.P., the minor child of their adult son, Zachary, and his wife, Melissa. (DE # 15 at 3.) In their complaint, plaintiffs allege that on March 3, 2008, J.P. suffered a spiral break of his arm. (*Id.* at 4.) A few days later, Zachary and Melissa took J.P. to an immediate care facility where he was transferred to a La Porte County Hospital. (*Id.*) At the hospital, the La Porte County DCS detained J.P. and placed him in foster care. (*Id.*) Upon release from the hospital, J.P. was placed with plaintiffs. (*Id.* at 5.) Plaintiffs allege that DCS removed J.P. from their home after six days because when Zachary and Melissa previously had lived with plaintiffs, they had not gotten along with plaintiffs and found them "strict." (*Id.*)

On May 23, 2008, DCS placed J.P. with his maternal grandmother. (*Id.*) Plaintiffs allege that J.P.'s maternal grandmother had a documented history of substance abuse. (*Id.*) DCS removed J.P. from his maternal grandmother's home one month later. (*Id.*) At this time, DCS did not place J.P. with plaintiffs, but instead placed him in foster care. (*Id.*) On May 23, 2008, J.P. was returned to Zachary and Melissa. (*Id.*)

According to plaintiffs, Zachary and Melissa requested financial assistance from DCS to move out of La Porte County, in order to get away from plaintiffs. (*Id.*) Further, plaintiffs allege that on August 14, 2008, DCS paid $1,168.47 to assist Zachary and

Melissa with moving to St. Joseph County. (*Id.*) Plaintiffs allege that DCS did not conduct a proper investigation into J.P.'s living conditions in order to figure out that Zachary and Melissa wanted to keep J.P. away from plaintiffs. (*Id.*) On March 23, 2009, DCS removed J.P. from Zachary and Melissa's home and took him to the hospital where he was admitted into intensive care. (*Id.* at 5-6.) When J.P. was released, DCS placed J.P. with a second set of foster parents, rather than with plaintiffs. (*Id.* at 6.)

At some point, a Child in Need of Services ("CHINS") case was initiated in Indiana state court, although the record does not yet contain facts regarding the precise dates of the proceedings. Plaintiffs allege that on May 13, 2009, they moved to intervene in the CHINS proceeding to seek custody of J.P. (*Id.*) Plaintiffs allege that they also filed a petition for adoption. (*Id.*) Plaintiffs argue that they provided a nurturing environment for J.P. and were actively involved in his life. (*Id.*) Although plaintiffs do not say so explicitly in the amended complaint, it is evident that their adoption efforts were unsuccessful.

Plaintiffs filed the present lawsuit on February 11, 2011 (DE # 1), and amended the complaint on June 17, 2011 (DE # 15). In their amended complaint, plaintiffs allege that defendants violated their rights under the United States Constitution and the constitution of the State of Indiana and committed numerous torts, including intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), negligence, and gross negligence.

Many of plaintiffs allegations are aimed at the Indiana Department of Child Services. Plaintiffs allege that DCS hindered, delayed, and interfered with plaintiffs' efforts to adopt their grandson. (DE # 15 at 6, 8.) Plaintiffs also allege that DCS inadequately trained DCS employees. (*Id.* at 8.) Finally, plaintiffs allege that DCS failed to properly investigate whether plaintiffs' home was a safe and stable environment and if the best interests of their grandson would have been served by placing him with plaintiffs. (*Id.* at 5-6.) According to plaintiffs, their grandchild's interests would have been better served had he been placed with them, rather than with foster parents, the child's biological parents, or with the child's maternal grandmother. (*Id.* at 5-6.)

Plaintiffs have also sued a number of individuals: Albrecht, a DCS attorney; Slaughter, a DCS supervisor; Corbin and Hardman, two DCS case managers; Appleby, a court-appointed special advocate; and Roehm, who works for an Indiana human services organization called Families First. The individual defendants have been sued in both their official and personal capacities. Plaintiffs allege that Albright, Corbin, Appleby, and Roehm participated in a conspiracy to place false testimony before a court and to provide information known to be false to a court (presumably during the CHINS and adoption proceedings). (*Id.* at 6-7.) Plaintiffs also allege that Corbin told plaintiff David Pelham that he would never be allowed to adopt his grandchild and that she would actively act to delay their efforts to do so. (*Id.* at 7.) Finally, plaintiffs allege that Slaughter and Hardman failed to properly train and supervise DCS personnel, including Corbin, so that a proper investigation could occur. (*Id.* at 6-7.)

## II.  LEGAL STANDARD

Defendant Roehm has moved to dismiss plaintiffs' claim brought pursuant to 42 U.S.C. § 1983 for failure to state a claim pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). (DE # 17.) The State Defendants have moved for judgment on the pleadings pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(c). (DE # 25.) Because motions filed pursuant to RULE 12(c) are reviewed by employing the same standard that applies when reviewing a motion to dismiss for failure to state a claim under RULE 12(b)(6), *Buchanan-Moore v. County of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009), the court will apply the RULE 12(b)(6) standard to both motions in this opinion.

A judge reviewing a complaint under a RULE 12(b)(6) standard must construe it in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-movant's favor. *Erickson v. Pardus* , 551 U.S. 89, 93 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010). Under the liberal notice-pleading requirements of the FEDERAL RULES OF CIVIL PROCEDURE, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy RULE 8(a), "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ray v. City of Chicago,* 629 F.3d 660, 662-63 (7th Cir. 2011); *Twombly,* 550 U.S. at 555, 570. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) among other authorities). As the Seventh Circuit recently explained, a complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

However, the plaintiff does not need to plead facts that establish each element of a cause of action and, "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan*, 40 F.3d at 251. Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.    DISCUSSION

### A.    The State Defendants' Motion to Dismiss

#### 1.    *The Rooker-Feldman Doctrine*

The State Defendants argue that plaintiffs' complaint is barred by the *Rooker-Feldman* doctrine, depriving this court of jurisdiction over any of plaintiffs' claims. Because this argument is jurisdictional in nature, the court addresses it first. The *Rooker-Feldman* doctrine derives its name from two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The *Rooker–Feldman* doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments. *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002). The doctrine "is not limited to just those claims alleging that the state court judgment itself caused the federal plaintiff's injury; the doctrine also precludes federal jurisdiction over claims 'inextricably intertwined' with a state court determination." *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir 2000) (quoting *Feldman,* 460 U.S. at 483-84 n.16). As the Seventh Circuit has noted, "it can be difficult to discern which claims are and which claims are not 'inextricably intertwined' with a state judgment." *Id.* The pivotal inquiry in applying the doctrine is whether the federal plaintiff seeks to set aside a state court judgment or whether he is presenting an independent claim. *Id.*

In *A.D. Brokaw v. Weaver,* 305 F.3d 660 (7th Cir. 2002), the Seventh Circuit considered a case similar to the present one. In that case, the plaintiff filed suit in federal

court against various county and state officials and agencies, including caseworkers employed by a state child and family services agency, for conspiring to remove her from her parents' home as a child through state court judicial proceedings based on false allegations of child neglect. *Id.* at 622. The Seventh Circuit held that the *Rooker-Feldman* doctrine did not bar the plaintiff's suit because she "was not claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, she [was] alleging that the people involved in the decision to forcibly remove her from her home and her parents . . . violated her constitutional rights, independent of the state court decision." *Id.* at 665.

The *Weaver* court based its decision, in part, on an earlier case addressing the *Rooker-Feldman* doctrine, *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995). In that case, the plaintiff had alleged that lawyers involved in a state court law suit had used their political clout to make the state judges rule against him. *Id.* at 1004. As it did in *Weaver,* the Seventh Circuit held in *Nesses* that the *Rooker-Feldman* doctrine did not bar the plaintiff's suit because he did not allege that the state court judgment denied him a constitutional right, but rather that the improper actions of the lawyers resulted in the denial of the plaintiff's right to be judged by a tribunal uncontaminated by politics.[2] In other words, because the suit was not attacking the state court judgment, the *Rooker-Feldman* doctrine did not bar it.

---

[2] In *Nesses*, the court did not hold that such a right actually existed. In fact, the court went so far as to state: "We have grave doubts that Nesses has even stated a federal claim." 68 F.3d at 1005.

The logic of *Weaver* and *Nesses* applies in this case. Plaintiffs have expressly disclaimed any interest in pursuing a claim that they were harmed when the state court denied them custody of their grandchild. (DE # 27 at 8 (stating that plaintiffs "are not challenging the final placement decision.")) Given this clarification, it appears that plaintiffs suit does not seek review of a state court judgment. Instead, like the plaintiffs in *Weaver* and *Nesses,* plaintiffs allege that the improper actions of the State Defendants constituted tortious conduct and resulted in the denial of their constitutional rights. Accordingly, the *Rooker-Feldman* doctrine does not bar plaintiffs' lawsuit.

### 2. *Standing*

Plaintiffs state in their complaint that their action is based upon the alleged violation of at least two rights: "a substantive due process right to family integrity or association as grandparents and a liberty interest in obtaining custody, visitation and adoption of their grandchild." (DE # 15 at 2.) The State Defendants argue that plaintiffs lack standing to bring a Section 1983 claim against them because grandparents have no rights to family integrity or association as grandparents or any liberty interest in the care and custody of their grandchildren simply by virtue of being grandparents. (DE # 26 at 4-6.)

Plaintiffs do not respond to this argument in their response brief. Failure to respond to an argument raised in a motion to dismiss results in waiver. *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, the court dismisses plaintiffs' Section 1983 suit against the State Defendants to the extent that it is grounded in an

alleged substantive due process right to family integrity or association as grandparents and/or an alleged liberty interest in obtaining custody, visitation, and adoption of their grandchild.[3]

### 3.    *Plaintiffs' Federal Claims*

The parties agree that DCS and the individual State Defendants sued in their official capacities are not "persons" under Section 1983. (DE # 26 at 8; DE # 27 at 8.) Accordingly, judgment on the pleadings is appropriate as to plaintiffs' Section 1983 claim against them. Therefore, with regard to plaintiffs' Section 1983 claim, only the claims against the individual defendants in their individual capacities remain. The State Defendants argue that both absolute and qualified immunity shield the individual defendants from plaintiffs' Section 1983 claims. Each of these immunities is addressed in turn below.

### a.    *Absolute Immunity*

The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process. For example, a judge acting in his judicial capacity is absolutely immune from such suits, *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978), a prosecutor is absolutely immune for

---

[3] Though plaintiffs have abandoned the aforementioned theories of recovery, their complaint and response brief allude to other possible constitutional bases for their Section 1983 suit. (*See, e.g.*, DE # 27 at 6-8, in which plaintiffs' discuss defendants' alleged violation of plaintiffs' right to meaningful access to the courts.) The State Defendants have made no argument regarding the plaintiffs' standing to assert a Section 1983 claim based on any of these alternate theories, and the court will not make such an argument for them.

activities which are "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution, *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976), and witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony. *Briscoe v. La Hue,* 460 U.S. 325, 341, 345-46 (1983).

The rationale for according absolute immunity is to allow participants in the judicial system the latitude to perform their functions absent the threat of retaliatory Section 1983 litigation. The Supreme Court has recognized that absolute immunity comes at a cost. "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler,* 424 U.S. at 427. Thus, "'the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'" *Id.* at 428 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.)). In short, "[a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512 (1978).

Courts have taken a task-specific approach to determining whether absolute immunity applies. *Houston v. Partee,* 978 F.2d 362, 366 (7th Cir. 1992). In other words, it is the task performed by the government official – not the government official's title or position – that determines whether absolute immunity will shield the official from suit.

*Id.* (holding that "[w]e do not decide whether a *prosecutor* is entitled to absolute immunity; we decide whether a prosecutor *performing a particular function* is entitled to absolute immunity" (emphasis in original)). For example, while a prosecutor is absolutely immune for initiating criminal prosecution, the same immunity will not protect prosecutors for actions which may be classified as administrative or investigative. *Imbler,* 424 U.S. at 430-31; *Harlow,* 457 U.S. at 811 n.16. Similarly, an officer applying for a warrant is not absolutely immune from suit because applying for a warrant is "further removed from the judicial phase of criminal proceedings" than actions such as seeking an indictment, the first step in the process of actually seeking a conviction in court. *Malley v. Briggs,* 475 U.S. 335, 340-41 (1986). As the Tenth Circuit aptly summarized, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir. 1990).

While the Supreme Court has not considered under what circumstances individuals working in the field of child protection and advocacy are entitled to absolute immunity, the Seventh Circuit Court of Appeals discussed the issue squarely in *Millspaugh v. County Dep't of Public Welfare of Wabash County,* 937 F.2d 1172, 1176 (7th Cir. 1991). In *Millspaugh,* the Seventh Circuit considered allegations that a social worker pursued custody proceedings involving the plaintiffs' children simply because she disliked the plaintiffs' religion, failed to furnish the court with material that would have been favorable to the plaintiffs during the custody proceedings, and neglected to ensure that the plaintiffs received adequate notice of the custody hearings. *Id.* at 1175. The

plaintiffs argued that even though the social worker's actions occurred in connection with judicial proceedings, the actions were so clearly unlawful that absolute immunity should not apply. The Seventh Circuit disagreed, holding that "immunity that applies only when the defendant did no wrong is no immunity at all." *Id.* The court further held that "[the social worker's] motives in asking the court to do certain things, and her selection of evidence to present, lie at the core of the subjects to which absolute immunity applies." *Id.* The court reasoned that even assuming that the social worker acted out of improper motives and misled the court, "social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Id.* at 1176.

In this case, plaintiffs allege that State Defendants Albrecht and Corbin participated in a conspiracy to place false testimony and information known to be false before a court. (DE # 1 at 6-7.) Absolute immunity clearly protects these defendants from a lawsuit based on these alleged acts, as the alleged conduct is "intimately associated with the judicial process," *Imbler,* 424 U.S. at 430, and involves their "testimony and other steps taken to present the case for decision by the court." *Millspaugh,* 937 F.2d at 1176; *see also Briscoe,* 460 U.S. at 341 (witnesses are immune for civil damages based upon their testimony). These defendants are protected by absolute immunity for these alleged actions, despite the fact that they may have misled the court or possessed improper motives. *Millspaugh,* 937 F.2d at 1176. Accordingly, plaintiffs'

Section 1983 claims against Albrecht and Corbin in their individual capacities must be dismissed.[4]

Still remaining are plaintiffs' Section 1983 claims against two State Defendants: Slaughter and Hardman, in their individual capacities. Plaintiffs allege that these defendants failed to properly train and supervise DCS personnel to ensure a proper investigation into the living conditions of plaintiffs' grandchild. The Supreme Court has held that officials' investigatory actions are not protected by absolute immunity because investigations are too remote from judicial proceedings to justify application of the immunity. *Buckley,* 509 U.S. at 272-73; *Imbler,* 424 U.S. at 430-31; *Harlow,* 457 U.S. at 811 n.16. Elaborating upon this principle, the Seventh Circuit has held that "absolute immunity does not protect the gathering of evidence [by a social worker]." *Millspaugh,* 937 F.2d at 1176. This is true "even though the acts of presenting that evidence to (or withholding it from) the court receive greater protection." *Id.* Accordingly, Slaughter and Hardman are not entitled to absolute immunity for their alleged failure to ensure a proper investigation and/or train their subordinates to do the same.

_____

[4] The complaint alleges that the conspiracy to provide false testimony and false information to a court also involved defendants Roehm and Appleby. (DE # 15 at 6-7.) However, Roehm did not address absolute immunity in her motion, and Appleby filed no motion at all, so the court cannot address the issue with respect to either of those defendants in this order. *Dawson v. Newman,* 419 F.3d 656, 660 (7th Cir. 2005) (district court may not grant motion to dismiss as to claims against party that neither filed nor joined motion). Nonetheless, the court notes that were Roehm or Appleby to file a motion arguing for the application of absolute immunity to the allegations underlying plaintiffs' Section 1983 claim against them, the analysis laid out herein with respect to Albrecht and Corbin would presumably apply.

Though Slaughter and Hardman are not entitled to absolute immunity for their alleged actions, they may still be entitled to qualified immunity. Qualified immunity shields government officials who are performing discretionary functions from liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. More specifically, qualified immunity applies unless: (1) the facts alleged by the plaintiff make a showing that the official's conduct violated a constitutional right; and (2) that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). These two prongs can be analyzed in any order. *Pearson v. Callahan,* 555 U.S. 223, 237-38 (2009).

The court begins by attempting to identify the alleged constitutional right at issue. In the complaint, plaintiffs allege that Slaughter and Hardman failed to properly train and supervise DCS personnel to ensure a proper investigation into the living conditions of plaintiffs' grandchild. (DE # 15 at 6-7.) However, the Seventh Circuit has held that there exists no constitutional right to a competent social worker. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 812 F.2d 298, 304 (7th Cir. 1987); *Archie v. City of Racine,* 847 F.2d 1211, 1221 (7th Cir. 1988) ("the Due Process Clause does not ensure that social workers will be competent, even if incompetence exposes children to grave injury"). Further, and perhaps more importantly, there is no caselaw establishing that

grandparents possess a constitutional right to a competent social worker for their grandchildren.

Some other constitutional right must underlie plaintiffs' Section 1983 suit against Slaughter and Hardman in order for that suit to survive. Plaintiffs' complaint focuses primarily on plaintiffs' supposed rights as grandparents to familial association and/or a liberty interest in the adoption of their grandchild. However, as explained above, plaintiffs have abandoned these theories by failing to address them in any way in their response to defendants' motion for judgment on the pleadings. As for the remainder of the complaint, it is riddled with constitutional jargon but contains few facts to lend plausibility to the constitutional theories implicated. Most notably, plaintiffs repeatedly allege that they were denied "equal protection" under the law (*see, e.g.,* DE # 15 at 8), but the complaint lacks any facts establishing a plausible claim that plaintiffs were treated differently than any other persons. Such facts would be necessary to maintain an equal protection claim, since the Equal Protection Clause is "concerned . . . with equal treatment rather than with establishing entitlements to some minimum of government services." *Hilton v. City of Wheeling,* 209 F.3d 1005, 1007 (7th Cir. 2000). Thus, the Equal Protection Clause cannot possibly serve as the constitutional basis for plaintiffs' claims against Slaughter and Hardman.

The only other purported constitutional claim discernable from the complaint is the theory (set forth primarily in plaintiffs' response brief, rather than in their complaint) that plaintiffs were denied meaningful access to the court system. (DE # 27

at 6.) However, plaintiffs' allegations against Slaughter and Hardman are inadequate to state a plausible claim against them for such a violation. Causation is a necessary element for any constitutional claim. *DeShaney,* 812 F.2d at 302. If a defendant's actions, however blameworthy, did not cause a plaintiff's injuries, the defendant cannot be said to have deprived him of his constitutional rights. *Id.* In this case, the only allegations against Slaughter and Hardman are that they inadequately trained and supervised DCS personnel to ensure a proper investigation into their grandchild's case. However, the complaint lacks allegations that would causally link Slaughter or Hardman's failure to train or supervise DCS personnel to plaintiffs' alleged lack of access to the court system. Based on the allegations in the complaint, the only inference the court can make is that Slaughter and Hardman's alleged acts occurred far in advance of plaintiffs' legal proceedings involving their grandchild. A series of mental and logical leaps – without any factual basis – would be required for the court to conclude that plaintiffs' court proceedings were somehow unfair due to Slaughter and Hardman's alleged shortcomings in their training of other DCS employees.

Further, to the extent that Slaughter and Hardman's alleged acts affected plaintiffs' court proceedings, the effect was superceded by the alleged actions of other defendants in this case. According to plaintiffs' complaint, the other defendants in this case, including two other DCS employees (Albrecht and Corbin) as well as a court-appointed special advocate (Appleby) and an employee of a local human services organization (Roehm), engaged in a conspiracy to provide false testimony and false

17

evidence to the court. The only plausible conclusion the court can reach is that the alleged conspirators were the cause of plaintiffs' inability to meaningfully access the court system, not Slaughter or Hardman. Further, even if Slaughter and Hardman failed to properly supervise and train the DCS employees supposedly involved in the conspiracy, plaintiffs have still alleged that the conspiracy involved other non-DCS employees, over whom Slaughter and Hardman had no apparent authority.

The Seventh Circuit has surmised that a simple way of determining whether causation has been established in the context of alleged constitutional wrongs is to ask whether the alleged injury would have occurred even if the defendants had never existed. In this case, it seems that the answer is yes. Given plaintiffs' allegations that both DCS employees and non-DCS employees engaged in a conspiracy to provide false testimony and false evidence to the court, plaintiffs would have been deprived of their purported right to meaningfully access the court system whether or not any of the DCS defendants existed. In short, plaintiffs' complaint lacks factual allegations to state a plausible claim that Slaughter or Hardman, by failing to train or supervise other DCS employees, caused plaintiffs to be deprived of a constitutional right.

As explained previously, qualified immunity applies unless the facts alleged by the plaintiff show that the official's conduct constitutes a violation of a constitutional right. *Saucier,* 533 U.S. at 201. In the foregoing analysis, the court has made every effort to extract a constitutional theory from the complaint (and even plaintiffs' response brief), but the court cannot discern any plausible constitutional claims against Slaughter

or Hardman. As such, plaintiffs have not satisfied at least one of the *Saucier* requirements with regard to Slaughter and Hardman, and those defendants are entitled to qualified immunity from plaintiffs' Section 1983 suit against them. *Id.*

### 4.   *Plaintiffs' State Law Claims*

In their complaint, plaintiffs appears to allege violations of their rights under the Indiana state constitution, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and gross negligence.

The individual State Defendants (Albrecht, Corbin, Slaughter, and Hardman) argue that Indiana law provides them with immunity from state law claims due to their status as employees of the Department of Child Services. The individual defendants are correct. By statute, the Department of Child Services is responsible for "[p]roviding child protection services" in that state. IND. CODE § 31-25-2-7(a)(1). The statute further provides: "The following are not personally liable, except to the state, for an official act done or committed in connection with performance of duties under this title: (1) The director of the department. (2) Other officers and employees of the department." *Id.* § 31-25-2-2.5. It is not disputed that Albrecht, Corbin, Slaughter, and Hardman are each employed by DCS and that their alleged acts were committed in connection with the performance of their duties as DCS employees. Accordingly, statutory immunity protects these defendants from plaintiffs' state law claims, and those claims must be dismissed. *Massenburg v. Richardson,* No. 3:09-CV-136, 2011 WL 294843, at *5 (N.D. Ind.

Jan. 25, 2011) (granting statutory immunity to DCS employee with regard to state law claims).

The only remaining State Defendant is DCS. Plaintiffs' allegations against DCS can be divided into two categories: conduct that involved the state CHINS and/or custody proceedings involving J.P., and conduct that did not. In the first category is plaintiffs' assertion that DCS hindered, delayed, and interfered with plaintiffs' efforts to adopt their grandson. (DE # 15 at 6, 8.) However, state law provides absolute immunity for state employees and state agencies for their assistance to the court in state proceedings involving child services. *H.B. v. State of Ind.-Elkhart Div. of Family & Child Servs.*, 713 N.E.2d 300, 302-03 (Ind. Ct. App. 1999) (DCF entitled to state law absolute judicial immunity against state law negligence claim); *McHugh v. Ind. Family and Soc. Servs. Admin.*, No. 4:06-cv-164-DFH-WGH, 2008 WL 2225638, at *8 (S.D. Ind. May 27, 2008) (DCF employees entitled to state law absolute judicial immunity against state law IIED claim). Accordingly, DCS is absolutely immune from all of plaintiffs' state law claims insofar as they allege that DCS acted improperly with respect to state judicial proceedings, including plaintiffs' legal attempts to gain custody of their grandchild.

The second category of allegations against DCS primarily consists of plaintiffs' complaints that DCS inadequately trained DCS employees (DE # 15 at 8) and failed to properly investigate whether plaintiffs' home was a safe and stable environment and if the best interests of their grandson would have been served by placing him with plaintiffs. (*Id.* at 5-6.) Plaintiffs also allege that DCS provided services to their grandson

and his parents once the child was returned to his parents and paid the child's parents $1,168.47 to assist them in moving to St. Joseph County. (*Id.*) Plaintiffs allege that this action was taken in accordance with a policy of paying the parents of any child it wished to gain control over, then giving the child to the foster parents of its choice. (*Id.*)

With regard to plaintiff's IIED claim against DCS, the claim fails because plaintiffs' allegations do not plausibly establish that DCS acted with the intent to harm plaintiffs. "The intent to harm emotionally constitutes the basis for the tort of an intentional infliction of emotional distress." *Ledbetter v. Ross,* 725 N.E.2d 120, 124 (Ind. Ct. App. 2000). In other words, intent is a necessary element of the tort. *See Cullison v. Medley,* 570 N.E.2d 27 (Ind. 1991). The plausibility standard applies even to allegations regarding states of mind, like intent. *Iqbal,* 129 S. Ct. at 1952. Plaintiffs allege that DCS failed to properly investigate their grandson's potential living environments, trained its employees in an inadequate manner, and operated under policies that served DCS's interests rather than the best interests of the child. At best, these allegations suggest that DCS was a poorly run organization. However, they do not support a plausible claim that DCS intended to emotionally harm plaintiffs. Accordingly, judgment on the pleadings is appropriate as to plaintiffs' IIED claim against DCS.

Plaintiffs' NIED claim against DCS also fails. The Supreme Court of Indiana has "never permitted . . . an action seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another. Such independent, stand-alone actions for negligent infliction of emotional distress are not cognizable in

Indiana." *Spangler v. Bechtel,* 958 N.E.2d 458, 466 (Ind. 2011). Actions seeking damages for emotional distress resulting from the negligence of another are permitted in only two limited situations. In the first, known as the "bystander rule," the plaintiff has witnessed or has come to the scene soon after the death or severe injury of a relative. *Id.* Plaintiffs' complaint does not suggest that they witnessed the death or severe injury of a relative as a result of DCS's alleged negligence, so the bystander rule provides them with no assistance.

The second permissible factual basis for an NIED claim is where the plaintiff has suffered a direct impact; this is also known as the "modified impact rule." *Id.* This rule requires a direct impact that is "'physical' in nature." *Atl. Coast Airlines v. Cook,* 857 N.E.2d 989, 997 (Ind. 2006). The impact need not constitute an "injury," but it must be a physical impact nonetheless. *Id.; compare Holloway v. Bob Evans Farms, Inc.,* 695 N.E.2d 991, 996 (Ind. Ct. App. 1998) (ingestion of portion of vegetables cooked with worm was direct physical impact); *Dollar Inn, Inc., v. Slone,* 695 N.E.2d 185, 189 (Ind. Ct. App. 1998) (hotel guest stabbing herself in the thumb with a hypodermic needle concealed in a roll of toilet paper was direct physical impact sufficient for NIED claim based on guest's fear of contracting AIDS, even though guest was not actually exposed to AIDS), *with Ross v. Cheema,* 716 N.E.2d 435, 437 (Ind. 1999) (hearing loud pounding at door was insufficient to constitute direct physical impact for purposes of NIED claim). In this case, plaintiffs have alleged no direct physical impact resulting from DCS's alleged

actions. Nor can any direct physical impact be reasonably inferred from the allegations in the complaint. Accordingly, plaintiffs NIED claim against DCS fails.

The State Defendants did not move for judgment on the pleadings on plaintiffs' negligence or gross negligence claims, or those claims brought pursuant to the Indiana constitution. Accordingly, those claims, to the extent that they are based on plaintiffs' allegations that DCS failed to properly investigate J.P.'s living conditions, train its employees, or set or operate under self-serving policies, remain pending.

**B.      Roehm's Motion to Dismiss**

Defendant Roehm filed a motion to dismiss plaintiffs' Section 1983 claim against her pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).[5] Roehm makes two arguments in her motion: (1) the *Rooker-Feldman* doctrine bars plaintiffs' suit against her; and (2) Roehm is not a state actor subject to liability under Section 1983. The court has already rejected the State Defendants' *Rooker-Feldman* argument above, and Roehm's argument is rejected for the same reasons. Accordingly, the only matter left for consideration is Roehm's argument that she is not a state actor subject to Section 1983 liability.

Roehm argues that as an employee of Families First, a local human services organization, she is a private person, not a state actor, and that as such she cannot be held liable under Section 1983. Indeed, a Section 1983 suit is only viable against a

---

[5] In her motion to dismiss, Roehm only addresses plaintiffs' Section 1983 claim, and not any of plaintiffs' state law claims. Accordingly, plaintiffs' state law claims against her remain pending.

defendant who has acted under color of law. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981). However, "the [Supreme] Court has long recognized that, on some occasions, the acts of a private party are fairly attributable to the state because the party has acted in concert with state actors." *Rodriguez v. Plymouth Ambulance Serv.,* 577 F.3d 816, 823 (7th Cir. 2009). For example, "a private party involved in . . . a conspiracy, even though not an official of the State, can be liable under § 1983." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970); *see also Lugar v. Edmundson Oil Co., Inc.,* 457 U.S. 922, 931 (1982) (same). In this case, plaintiffs have alleged that Roehm participated in a conspiracy with state actors (employees of DCS) to provide false testimony and false evidence to a court. The question is, then, whether plaintiffs have sufficiently stated a Section 1983 conspiracy claim; if so, then Roehm's actions can be fairly attributable to the state.

In stating a claim for a Section 1983 conspiracy, it is enough to "indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002). In light of the Supreme Court's decisions in *Twombly,* it is clear that plaintiffs' allegations must also state a plausible claim that a conspiracy existed. 550 U.S. at 555. This means that the complaint must include enough factual matter which, when taken as true, would suggest that an agreement was made. *Id.* at 556. Simply alleging that defendants engaged in the same conduct at the same time would not suffice. *Id.*

In this case, plaintiffs have alleged that Roehm, along with Albrecht, Corbin, and Appleby, participated in an out-of-court conspiracy to place false testimony and false

evidence before a court – presumably the court that addressed matters related to the custody and care of J.P. (DE # 15 at 6-7.) Plaintiffs allege that the purpose of the conspiracy was to interfere with, frustrate, hinder, and deny plaintiffs' efforts to adopt their grandchild. (*Id.*) Plaintiffs further allege that issues regarding J.P.'s well being began occurring in March of 2008, and that court proceedings occurred in May of 2009. (*Id.* at 5-6.) Accordingly, plaintiffs have sufficiently alleged facts which, if true, would indicate the other conspiring parties, the general purpose of the conspiracy, and the approximate date of the conspiracy.

Plaintiffs' allegations are also entirely plausible. Based on the allegations in the complaint, it is plausible that Roehm, an employee of Families First, worked cooperatively with Appleby, a court-appointed special advocate, and Albrecht and Corbin, two DCS employees, on the case involving plaintiffs' grandchild. Further, it is plausible that at some point during the case, these defendants agreed to place false testimony and evidence before the court in order to prevent plaintiffs from adopting their grandchild. Whether plaintiffs allegations are in fact true or have any substantive legal merit remains to be seen. For the time being, plaintiffs have sufficiently stated a Section 1983 conspiracy claim involving Roehm, so plaintiffs have also sufficiently alleged that Roehm was acting under color of state law and that she is potentially liable under Section 1983. *See Adickes,* 398 U.S. at 152; *Rodriguez,* 577 F.3d at 823.[6]

_____

[6] Roehm did not raised the issue of immunity or any other grounds for the dismissal of plaintiffs' Section 1983 claim against her, so the court cannot address them. *See Dawson,* 419 F.3d at 660. Accordingly, plaintiffs' Section 1983 claim against Roehm remains pending.

## IV.    CONCLUSION

For the foregoing reasons, Roehm's motion to dismiss (DE # 17) is **DENIED**, and

the State Defendants' motion for judgment on the pleadings (DE # 25) is **GRANTED, in**

**part, and DENIED, in part,** consistent with this opinion.

**SO ORDERED.**

Date: May 4, 2012

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT